UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James Michael Williams,<br><br>                        Plaintiff,<br>v.<br><br>William D. Gore, Sheriff, et al.,<br><br>                       Defendants. | Civil No. 15cv654 AJB (PCL)<br><br>**REPORT AND RECOMMENDATION:**<br><br>**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (doc. 52);**<br><br>**and**<br><br>**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (doc. 50).** |

## I. INTRODUCTION

Plaintiff James Michael Williams, an inmate currently incarcerated at RJ Donovan State Prison, has filed a 42 U.S.C. § 1983 lawsuit for violations of his Eighth Amendment rights from an alleged denial of medical care while incarcerated in the San Diego County jail system. (Doc. 1.) The Complaint contains claims against San Diego County Sheriff William D. Gore in his capacity as policy maker for the San Diego County jails and the Medical Director of the County jail, later identified as Dr. Alfred Joshua, M.D. (Doc. 1, at 2; see doc. 58.)

Plaintiff's first claim alleges that he was denied medical care for a knee injury sustained prior to his March 9, 2011 incarceration at the George Bailey Detention Facility (GBDF). (Doc. 1, at 3.) Plaintiff's second claim alleges that GBDF medical personnel denied him surgical repair of a facial injury sustained in an attack by another prisoner on April 3, 2011. (Doc. 1, at 4.) Plaintiff alleges that jail personnel ignored two Court-ordered referrals for treatment and surgery for his alleged conditions. (Id.)

Plaintiff has checked a box on the form Complaint indicating that he exhausted all forms of administrative relief for the alleged denial of medical care before filing suit but admits that he was not able to officially exhaust the Sheriff's administrative grievance procedure because "there exist no viable exhaustion with the Medical Department when every verbal request for my leg surgery was ignored with a reply 'you' must wait to be evaluated by our doctor." (Doc. 1, at 6.) Plaintiff contends that it is unnecessary to exhaust the Sheriff's administrative grievance process because jail medical staff "ignored' March 3 and May 5, 2011 court orders that he be medically evaluated for his knee/leg injuries. (Doc. 1, at 6.) With regard to his facial injuries, Plaintiff states that verbal requests for facial surgery were also outright denied, and "written request/complaints ... were not responded to." (Doc. 1, at 6.) Plaintiff argued that his verbal requests, Scripps records, and the Superior Court's notations in the criminal record that suggested he be referred to a medical unit while incarcerated all provided Defendants with "sufficient notice." (Doc. 1, at 6, 15-16.)

## II.

## EVIDENCE PRESENTED

**Defendants' Proffer**

San Diego County jails have an administrative grievance procedure by which all prisoner grievances are addressed. (Doc. 52-6; Lt. Jones Dec. ¶¶ 1-7; Exhibit 8.) Grievance forms are readily available for all prisoners to complete and submit, with three successive levels of subsequent review wherein jail facility personnel can resolve the grievance. (Doc. 52-6, at 2-3.) Each level of review provides the prisoner with a written response and a resolution, or reasons for its denial. (Id.)

Written grievances can be submitted in one of two ways. (Doc. 52-6, at 2.) They may be placed in a locked grievance box located outside the housing module, in which case the second page of the

1  form would be signed and returned to the inmate "within a couple of days." (Id.) Or a written grievance
2  can be handed to a deputy or staff member, who, in his or her discretion, will sign and return the second
3  page of the grievance form. (Id.) Inmates are told to keep a copy of this receipt for their records. (Id.)
4  The rules state that a written grievance will be answered within 10 days, and each time a grievance is
5  appealed to a higher level of command, there will be another 10-day response time. (Id.) The rules state
6  that there are three levels of review for grievances, and the inmate can submit the grievance for review
7  to the third and final level of grievance review, which is conducted by the Facility Commander. (Id.)

8  Defendants provide evidence that Plaintiff was aware of the Sheriff's administrative grievance
9  procedure as he had used it to address his grievance of being denied access to the law library. (Lt. Jones
10 Dec. ¶¶ 10-18; Exhibit 9, grievance materials at COSD000375-400 and 1918-21.) Defendants provide
11 evidence that Plaintiff also filed grievances regarding the mail policy and the County's response to
12 previous grievances. (Doc. 52-6, at 3-4; Lt. Jones Dec. at ¶ 15; Exhibit 10, Grievance Reports at
13 COSD001922-24.) In a declaration, Lt. Jones states that Plaintiff never submitted a grievance regarding
14 the alleged failure to provide medical care for either his leg or his face and never pursued exhaustion at
15 any level of review in the jail process. (Doc. 52-6, at 4; Lt. Jones Dec. ¶¶ 17-18.)  Defendants affirm that
16 Plaintiff was a prisoner incarcerated within the County jail system between March 9, 2011 until he was
17 transferred to the custody of California Department of Corrections on April 11, 2013. (Doc. 52-6, at 3.)

18  **Plaintiff's Proffer**

19  In his response to Defendants' Motion for Summary Judgment, Plaintiff states that he is "very
20 familiar with" the administrative grievance process. (Doc. 64, at 21.) Plaintiff states that he submitted
21 grievances regarding the jail's failure to provide medical care, specifically for both the leg/knee injury
22 and the facial injuries. (Doc. 64, at 21.) Plaintiff states that he could not secure a deputy or guard to sign
23 off on his grievances. (Doc. 64, at 27.) Plaintiff states that he filed a total of six grievances: three
24 regarding the leg/knee injury and three regarding the facial injuries. (Doc. 64, at 27.) Plaintiff states that
25 he deposited all grievances in the locked grievance box. (Doc. 64, at 30.) Plaintiff claims that Defen-
26 dants failed to respond to his written grievances. (Doc. 64, at 21.) Plaintiff states that he received no
27 copies of the grievances showing the grievances were received by the jail. (Doc. 64, at 31.)
28

As evidence, Plaintiff submitted two declarations from two different inmates, Leonardo V. Pena, and Patrick Stanley Pawlicki. (Doc. 64, at 58-61.) Inmate Pena declared that he "heard deputies/guards tell inmates to put their grievances in the designated grievance box" but refused to sign-off on such grievances personally. (Doc. 64, at 59.) He declared that "some guards would sign-off, where others would not." Doc. 64, at 59.) He declared that in the majority of cases guards told inmates to put their grievances, especially the serious ones like staff abuse, in the box rather than sign off on them. (Doc. 64, at 59.) He also declared that he heard that many inmates would complain over "non-responses to their issue." (Doc. 64, at 59.) Inmate Pawlicki likewise declared that "on many occasions I witnessed the jailers tell inmates to put their grievances in the grievance box" and "not signing off on the grievance so that the inmate would have a copy of it." (Doc. 64, at 61.) He declared that inmates would "complain when the jailers would not sign-off, because they wanted proof of their grievance being filed/sent." (Doc. 64, at 61.)

### III. STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before filing a § 1983 action in federal court. See 42 U.S.C. § 1997e(a). "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford [] officials time and opportunity to address complaints internally before the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006). Requiring exhaustion provides jail officials a "fair opportunity to correct their own errors" and creates an administrative record for grievances that eventually become the subject of federal court complaints. Id. at 94. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies ... available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (quoting Booth v. Churner, 532 U.S. 731, 739-41 (2001)). The mandatory language of the PLRA requiring exhaustion before bringing suit can only be excused in three kinds of circumstances: 1) an administrative scheme is so opaque that it is incapable of use; 2) the administrative procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" or 3) "a grievance procedure is

rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." Ross v. Blake, 136 S. Ct. 1850, 1853-54 (2016).

After the initial completion of discovery and before reaching the merits of the case, "[i]f the evidence permits, the defendant may move for summary judgment under Rule 56" on exhaustion grounds. Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: [] citing to particular part of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations." Fed. R. Civ. P. 56(c). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Id. The Ninth Circuit has held that "defendants have the burden of raising and proving the absence of exhaustion" with such evidence. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) (overruled on other grounds). Under Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014), a defendant using the failure to exhaust defense "must first prove there was an available administrative remedy and that the prisoner did not exhaust that available remedy." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015). "Then, the burden shifts to the plaintiff, who must show that there is something particular in this case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" Id. (citation omitted). After the burden shifts to the plaintiff, he must show that he "is entitled to summary judgment that there were no available administrative remedies at the jail within the meaning of the PLRA, and that he therefore satisfied § 1997e(a)'s exhaustion requirement." Albino v. Baca, 747 F.3d 1162, 1168 (9th Cir. 2014). Although declarations that are self-serving and uncorroborated can serve as evidence on summary judgment, "[t]he district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible in evidence." Nigro v. Sears, Roebuck and Co., 784 F.3d 495, 497 (9th Cir. 2015). "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997). If a defendant's motion for summary judgment on exhaustion grounds is to be denied, "disputed factual questions relevant to exhaustion should be decided by the judge, in the

same manner that a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue" before reaching the merits of the case. Albino v. Baca, 747 F.3d 1162, 1147 (9th Cir. 2014).

## IV. DISCUSSION

In this case, although Plaintiff admitted that he technically failed to exhaust his administrative remedies before filing suit, it is not clear from the face of Plaintiff's complaint whether he failed to pursue some "available" administrative relief before filing suit. See Albino, 747 F.3d at 1172. Plaintiff has pled that he did not exhaust his administrative remedies because "there exist no viable exhaustion with the Medical Department when every verbal request for my leg surgery was ignored with a reply 'you' must wait to be evaluated by our doctor." (Doc. 1, at 6.) Plaintiff contends that it is unnecessary to exhaust the Sheriff's administrative grievance process because jail medical staff "ignored' March 3 and May 5, 2011 court orders that he be medically evaluated for his leg/knee. (Doc. 1, at 6.) With regard to his claim for denial of care for his facial injuries, Plaintiff states that verbal requests for facial surgery were outright denied, and "written request/complaints ... were not responded to." (Doc. 1, at 6.) Plaintiff pled that his verbal requests, Scripps records, and the Superior Court's notations in the criminal record that suggested he be referred to a medical unit while incarcerated all provided Defendants with "sufficient notice." (Doc. 1, at 6, 15-16.)

Defendants have provided evidence in the form of an declaration from a jail deputy showing that Plaintiff was aware of the jail's grievance procedure, had used it for other grievances and received responses from the jail, and failed to use any stage of the grievance process regarding the two Eighth Amendment claims in Plaintiff's instant complaint. (Doc. 52-6; Lt. Jones Dec.) The declaration shows that inmates could either hand their grievance forms to a deputy or place them in a locked grievance box. (Id.) The declaration explains that if an inmate places a grievance in the box, he should expect to receive a receipt within a couple of days and a formal response within 10 days. (Id.) The declaration also states that there are three levels of review for inmate grievances, with the final review conducted by the Facility Commander. (Id.) The sworn declaration shows that the jail allowed a prisoner to file a grievance for any reason. (Id.)

With this declaration, Defendants have met their burden of raising and proving the absence of exhaustion in Plaintiff's case. Plaintiff now has the burden of showing that he "is entitled to summary

judgment that there were no available administrative remedies at the jail within the meaning of the PLRA, and that he therefore satisfied § 1997e(a)'s exhaustion requirement." Albino v. Baca, 747 F.3d 1162, 1168 (9th Cir. 2014). Plaintiff must provide evidence showing either 1) the administrative scheme is so opaque that it is incapable of use; 2) the administrative procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" or 3) that he was thwarted from taking advantage of the administrative process "through machination, misrepresentation, or intimidation." Ross v. Blake, 136 S. Ct. 1850, 1853-54 (2016). In response to Defendants' motion for summary judgment, Plaintiff states that he is "very familiar with" the administrative grievance process and that he submitted grievances regarding the jail's failure to provide medical care, specifically for both the leg/knee injury and the facial injuries. (Doc. 64, at 21.) Plaintiff states that he could not secure a deputy or guard to sign off on his grievances. (Doc. 64, at 27.) Plaintiff states that he filed a total of six grievances: three regarding the leg/knee injury and three regarding the facial injuries. (Doc. 64, at 27.) Plaintiff states that he deposited all grievances in the locked grievance box. (Doc. 64, at 30.) Plaintiff claims that Defendants failed to respond to his written grievances. (Doc. 64, at 21.) Plaintiff states that he received no copies of the grievances showing that the grievances were received by the jail. (Doc. 64, at 31.)

Plaintiff does not include these details in a signed declaration; rather, he makes these arguments in his opposition papers. Curiously, the pleadings do not include these added details but rather explain that there was "no viable exhaustion" remedy for his requests and that Defendants should have already been on notice of the facts in his complaints through previous court orders, medical records, and his verbal requests. Although his opposition papers contains arguments that his administrative remedies were effectively unavailable to him because jail medical personnel chose to ignore and failed to respond to his numerous grievances, Plaintiff provides no information as to when he attempted to give any deputies completed copies of the grievance forms or when he placed them in the grievance box. Plaintiff fails to provide copies of any of his grievances that were placed in the locked grievance box. Plaintiff fails to show how he made a good faith effort to get a response from the jail on any of his grievances. This court would be remiss to take Plaintiff's word in his opposition papers that jail officials ignored Plaintiff's submitted grievances when Plaintiff provides no tangible evidence admissible to a court that

these grievance forms were actually filled out in the first place and Plaintiff's original pleadings suggest that Plaintiff did not pursue his administrative remedies because he did not consider the remedy "viable."

What's more, the two affidavits that Plaintiff did submit in support of his argument that a administrative remedy was not available to him are from two inmates, Leonardo V. Pena and Patrick Stanley Pawlicki, who both make claims that administrative remedies were unavailable on the basis of hearsay. Inmate Pena merely "heard deputies/guards tell inmates to put their grievances in the designated grievance box" but refused to sign-off on such grievances personally and merely heard that many inmates would complain over "non-responses to their issue." (Doc. 64, at 59.) Inmate Pawlicki likewise merely heard "jailers tell inmates to put their grievances in the grievance box" and heard inmates "complain when the jailers would not sign-off, because they wanted proof of their grievance being filed/sent." (Doc. 64, at 61.) Because this evidence contains hearsay, it cannot be used to show that Plaintiff "is entitled to summary judgment that there were no available administrative remedies at the jail within the meaning of the PLRA, and that he therefore satisfied § 1997e(a)'s exhaustion requirement." Albino v. Baca, 747 F.3d 1162, 1168 (9th Cir. 2014). The bottom line is that Plaintiff has not provided admissible evidence that jail employees were consistently unwilling to provide any relief to aggrieved inmates or that he has been personally thwarted from pursuing his administrative remedies. As Defendants have met their burden showing that Plaintiff failed to exhaust his administrative remedies, and Plaintiff has not met his burden showing that there were no administrative remedies available, summary judgment should be granted for Defendants on the exhaustion issue (doc. 52), and Plaintiff should not be entitled to summary judgment (doc. 50).

## V.  CONCLUSION

This Report and Recommendation by the undersigned magistrate judge is submitted to United States District Judge Anthony J. Battaglia, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1 of the United States District Court for the Southern District of California.

For the foregoing reasons, the court RECOMMENDS that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion for summary judgment be DENIED. Any written objections to this Report and Recommendation must be filed with the Court and a copy served on all

parties on or before **February 3, 2017.** The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before **February 13, 2017.** The parties are advised that failure to file either of these documents within the specified time periods may waive the right to raise those objections on appeal of this Court's order. Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

    IT IS SO ORDERED.

DATED: January 20, 2017

Peter C. Lewis
U.S. Magistrate Judge